# I<small>N THE</small> U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>
# <small>FOR THE</small> M<small>IDDLE</small> D<small>ISTRICT OF</small> P<small>ENNSYLVANIA</small>

| | |
|---|---|
| Mohamad Nouri, | : |
| | : |
| Plaintiff, | : JURY TRIAL DEMANDED |
| | : |
| v. | : |
| | : |
| Pennsylvania State University, Rodney Erickson, Mary Hines, Jeffrey Senese, Gary Mullen, Robert Secor, Marty Slann, and James Horne, | : |
| | : |
| Defendants. | : |

## Complaint

1. This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff Mohamad Nouri, a former employee of Defendant Pennsylvania State University ("PSU"), who has been harmed by Defendants' discrimination and retaliation, and the wrongful termination of his employment.

2. Dr. Nouri brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a; 42 U.S.C. §§ 1981, 1983, 1985, and 1986; and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

## I. Jurisdiction and Venue

3. This court has original jurisdiction over Dr. Nouri's federal law claims pursuant to 28 U.S.C. § 1331.

4. Dr. Nouri has fulfilled all conditions precedent to the filing of this lawsuit. Specifically, on February 1, 2010, the EEOC issued a Final Determination and Notice of Right to Sue.

5. This court has supplemental jurisdiction over Dr. Nouri's state law claims pursuant to 28 U.S.C. § 1367.

## II. Parties

### A. Plaintiff Mohamad Nouri

6. Plaintiff Mohamad Nouri ("Dr. Nouri") is a Virginia citizen residing in Mclean, Virginia.

7. Dr. Nouri is Persian. He was born in Iran in 1949.

8. Dr. Nouri earned his doctoral degree in Mathematics from University of London, Kings' College. Thereafter, he held teaching positions at the University of London, Kyoto University in Japan, the International Centre for Theoretical Physics in Italy, and Sharif University of Technology in Iran.

9. Dr. Nouri emigrated to the United States in 1987 and worked at Toledo University as a Professor.

10. In 1988 PSU hired Dr. Nouri as an Associate Professor of Mathematics.

11. Based upon Dr. Nouri's excellent teaching, research, and publishing, Dr. Nouri received tenure in 1991 as a Professor of Science Technology and Society in the Eberly College of Science at University Park.

12. Because of their discrimination on the basis of Dr. Nouri's race, national origin, and age, and in retaliation for Dr. Nouri's complaints to the University, PSU terminated Dr. Nouri's employment in April 2004.

**B.      Defendants**

13.  PSU is a land-grant University in the Commonwealth of Pennsylvania.

14.  PSU receives federal funding.

15.  At the relevant times, Rodney Erickson was PSU's Provost. Dr. Erickson is an adult individual.

16.  At the relevant times, Mary Hines was PSU's Campus Executive Officer. Dr. Hines is an adult individual.

17.  At the relevant times, Jeffrey D. Senese was PSU's Chief Academic Officer/Director of Academic Affairs. Dr. Senese is an adult individual.

18.  At the relevant times, Gary Mullen was Head of PSU's Mathematics Department.  Dr. Mullen is an adult individual.

19.  At the relevant times, Robert Secor, was Vice Provost for Academic Affairs at PSU. Dr. Secor is an adult individual.

20.  At the relevant times, Marty Slann was PSU's Director of Academic Affairs. Dr. Slann is an adult individual.

21. The foregoing employees of PSU were all in supervisory or managerial positions.

22. At the relevant times, James Horne, Esquire, represented PSU in a lawsuit that Dr. Nouri filed against PSU in 1997. Mr. Horne is an adult individual.

23. At the relevant times, PSU acted by and through its agents, representatives, servants, and employees, each of whom acted within the course and scope of his or her employment for PSU, under PSU's control, and at PSU's direction.

24. At all relevant times, the individual Defendants acted in both their individual and official capacities.

## III. Underlying Facts

### A. Dr. Nouri Engaged in Protected Activity

25. In 1994 Dr. Nouri was Chair of a search committee. He raised concerns to PSU's Affirmative Action office about pressure he had received from PSU's administration to favor under-qualified candidates.

26. Rather than address his concerns, PSU engaged in discrimination based on Dr. Nouri's race, religion, and national origin to marginalize and exclude him.

27. As well as complaining to PSU's Affirmative Action office, because of PSU's discrimination Dr. Nouri filed a Charge of Discrimination with the Equal Employment Opportunity Commission and with the Pennsylvania Commission on Human Relations.

28. Dr. Nouri filed a civil rights lawsuit against PSU on August 27, 1997, styled *Mohamad Nouri v. The Pennsylvania State University,* 4:CV-97-1317 (Middle District of PA).

29. Dr. Nouri prevailed following a jury trial.

**B.    Defendants Conspired and Took Adverse Employment Actions Against Dr. Nouri**

30. Upon information and belief, the individual Defendants communicated and conspired with one another concerning Dr. Nouri's efforts to resist their unlawful acts and orchestrated their discrimination and retaliation against him.

- 7 -

31. After Dr. Nouri filed his lawsuit he was identified by Defendants as a "problem."

32. Defendants engaged in a wide range of adverse employment actions against Dr. Nouri in furtherance of their conspiracy to discriminate and retaliate against him and force him from his job.

33. Among other things, Defendants authored e-mails and memorandums suggesting that because Dr. Nouri is a Muslim from Iran he must be a religious zealot who might be violent; that they should remove his teaching duties to pressure him to leave; and that they should force Dr. Nouri to move to another campus to pressure him to leave; Dr. Nouri was denied sabbatical opportunities; was given low performance evaluations which had no basis; and Defendants contacted Dr. Nouri's colleagues and former students and derided his reputation to them. Defendants went further and conspired to manufacture allegations of plagiarism against Dr. Nouri in order to unlawfully terminate his employment.

34. Defendants were repeatedly informed by the third parties they contacted that Dr. Nouri had not committed any violations of academic standards or PSU's policies. Nevertheless, Defendants failed to prevent the conspiracy to deprive Dr. Nouri of his federally protected rights.

35. Instead, despite evidence supporting Dr. Nouri, Defendants conducted a sham hearing and terminated Dr. Nouri's employment.

36. Defendants continued their conspiracy to deprive Dr. Nouri of his legal rights by opposing his application for unemployment compensation. Notably, after an extensive hearing involving the testimony of multiple witnesses, the Pennsylvania Unemployment Compensation Board found that PSU had no cause to terminate Dr. Nouri's employment.

37. The retaliation did not end after PSU terminated Dr. Nouri's employment. Instead, Defendants have taken overt retaliatory acts to interfere with Dr. Nouri obtaining employment at other universities, including Catholic University in Washington, D.C.

### C. The Reason Dr. Nouri was Subjected to the Adverse Actions was Because he Engaged in Protected Activity

38. Before Dr. Nouri's complaints about Defendants' unlawful activity, he did not have any problems at work. Dr. Nouri consistently received positive performance evaluations and positive student evaluations.

39. Dr. Nouri met all of PSU's requirements as a tenured professor.

40. At no time did Dr. Nouri violate any of PSU's rules or procedures.

### D. Dr. Nouri has Suffered Damages as a Result of Defendants' Illegal Actions

41. As a result of Defendants' illegal actions, Dr. Nouri has suffered monetary damages.

42. Dr. Nouri has suffered unemployment.

43. Because of Defendants' continuing retaliation, Dr. Nouri has found it impossible to find equivalent employment.

44.     Dr. Nouri has also suffered non-monetary damages, including damage to his reputation, and emotional harm from Defendants' discrimination.

## Count 1
### Title VII
(*Against PSU*)

45.     The foregoing paragraphs are incorporated herein.

46.     Based on the foregoing, PSU has engaged in unlawful practices in violation of Title VII, including, but not limited to, perpetuating a hostile work environment, subjecting Dr. Nouri to unlawful discrimination and harassment, subjecting Dr. Nouri to more onerous working conditions after he complained about the discrimination, harassment, and the hostile work environment, and unlawfully terminating Dr. Nouri's employment in retaliation for opposing its discrimination and harassment.

47.     PSU has continued their unlawful conduct even after Dr. Nouri's employment was unlawfully terminated.

48. PSU knew or should have known of the unlawful conduct of its employees because it was so pervasive that a reasonable employer would have been aware of it, and because Dr. Nouri complained about it.

49. As a direct result of PSU's unlawful discriminatory practices in violation of Title VII, Dr. Nouri has suffered a loss of earnings, severe emotional and psychological distress, loss of self esteem, loss of future earnings power, plus back pay, front pay, and interest due thereon.

## Count 2
### 42 U.S.C. § 1981
(*Against PSU and the Individual Defendants*)

50. The foregoing paragraphs are incorporated herein.

51. Defendants engaged in illegal, intentional discrimination based upon Dr. Nouri's race by, including, but not limited to, perpetuating a hostile work environment, subjecting Dr. Nouri to unlawful discrimination and harassment, subjecting Dr. Nouri to more onerous working conditions after he complained about the discrimination, harassment, and hostile work environment, and terminating Dr. Nouri's

employment in retaliation for opposing their discrimination and harassment.

52. Defendants have continued their unlawful conduct even after Dr. Nouri's employment was unlawfully terminated.

## Count 3

### 42 U.S.C. § 1983

*(Against PSU and the Individual Defendants)*

53. The foregoing paragraphs are incorporated as if fully set forth herein.

54. The individual Defendants were Dr. Nouri's supervisors, or exercised de facto supervisory authority over him.

55. Defendants' actions were under color of state law.

56. Dr. Nouri belongs to a protected class.

57. Dr. Nouri's speech and actions addressed a matter of public concern that was not against the interest of PSU in promoting the efficiency of its services to the public, and was not only of personal interest.

58. Dr. Nouri's speech and actions played a substantial part in Defendants' adverse actions against him.

59. Dr. Nouri's activity in resisting Defendants' unlawful actions is protected activity.

60. By their intentional adverse actions against him, Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

61. By their intentional adverse actions against him, Defendants violated the First Amendment to the United States Constitution.

## Count 4
### 42 U.S.C § 1985
(*Against PSU and the Individual Defendants*)

62. The foregoing paragraphs are incorporated as if fully set forth herein.

63. Dr. Nouri belongs to a protected class.

64. Defendants' deprivation of Dr. Nouri's rights is pursuant to a policy and/or practice.

65. Defendants engaged in a conspiracy, motivated by their discriminatory class-based animus, to deprive Dr. Nouri and other members of his protected class of the equal protections of the law.

66. Defendants' actions in furtherance of their conspiracy were under color of state law.

67. Each individual Defendant has personal involvement in the wrongs against Dr. Nouri, including participation in, personal direction of, or knowledge of and acquiescence in the violations.

68. By their intentional adverse actions against him, Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## Count 5
### 42 U.S.C. § 1986
(*Against PSU and the Individual Defendants*)

69. The foregoing paragraphs are incorporated as if fully set forth herein.

70. Defendants had knowledge that the wrongs conspired to be done against Dr. Nouri were about to be committed.

71. Each Defendant had the power to prevent or aid in preventing the commission of the wrongful acts against Dr. Nouri.

72. Despite their knowledge and their authority to prevent the deprivation of Dr. Nouri's federally protected rights, each Defendant neglected or refused to take any step to stop the harm against Dr. Nouri.

73. Because of Defendants' failure to act, Dr. Nouri suffered harm that Defendants' reasonable diligence could have prevented.

74. Defendants are liable for all damages caused by their wrongful acts.

## Count 6

**Pennsylvania Human Relations Act**
(*Against PSU and the Individual Defendants*)

75. The foregoing paragraphs are incorporated herein.

76. Based on the foregoing, Defendants engaged in unlawful practices in violation of the PHRA.

77. The individual Defendants aided and abetted and were accomplices to the direct discriminatory and adverse acts against Dr. Nouri.

78. The individual Defendants failed to take action to prevent discrimination and adverse acts by employees and representatives under their supervision.

79. Defendants are liable to Dr. Nouri for, among other things, fostering and perpetuating a hostile work environment, retaliating against Dr. Nouri because of his expressed opposition to their unlawful acts by subjecting Dr. Nouri to more onerous working conditions, and treating Dr. Nouri in a disparate manner.

## IV. Prayer for Relief

80. The foregoing paragraphs are incorporated herein.

**WHEREFORE**, Dr. Nouri requests that the Court enter judgment in his favor and against Defendants and Order that:

(a) Dr. Nouri be compensated and reimbursed for all pay and benefits he would have received had it not been for Defendants' illegal actions, including, but not limited to, back pay, front pay, wages, salary, pay increases, bonuses, insurance, benefits, training, promotions, seniority, and any other compensation Dr. Nouri lost, plus interest;

(b)     Dr. Nouri be awarded actual damages, as well as damages for pain, suffering, inconvenience, mental anguish, loss of employment, and humiliation caused by Defendants;

(c)     Defendants pay punitive damages in an amount believed by the trier of fact to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants and others from engaging in such misconduct in the future;

(d)     Dr. Nouri be awarded the costs and expenses of this action, including his attorneys' fees;

(e)     All other relief allowed by law; and that

(f)     Dr. Nouri be accorded other equitable and legal relief as the Court deems just, proper, and appropriate.

## V. Jury Demand

Dr. Nouri demands a trial by jury.

                                          Respectfully submitted,

                                          /s/Frank Conley
                                          Frank J. Conley, Esquire
                                          (PA #86587)
                                          THE CONLEY FIRM
                                          7715 Crittenden Street, Suite 113
                                          Philadelphia, PA • 19118
                                          (215) 836-4789 | fax: (215) 689-0946
                                          FConley@ConleyFirm.com

Date: April 30, 2010